NORTH CAROLINA

ROWAN COUNTY

FILED

2012 DEC -6 PM 2: 36

ROWAN COUNTY, C.S.C.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO. 12 CvS 3113

MARK GOLDSTON,

    Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,

    Defendant.

)
)
)
)
)
)
)
)
)
)

COMPLAINT
(JURY TRIAL DEMANDED)

NOW COMES the plaintiff, by and through his counsel, and who, for this cause of action, alleges and says as follows:

## I. INTRODUCTION

This is an action arising under North Carolina and federal law for age discrimination, disability discrimination, retaliation and wrongful termination in violation of public policy and other related actions on the part of defendant.

## II. PARTIES

1. That the plaintiff Mark Goldston ("plaintiff") is a citizen and resident of Rowan County, North Carolina.

2. That the defendant United Parcel Service, Inc. ("defendant") is upon information and belief, a corporation incorporated in the State of Ohio and is authorized to conduct business in the in the State of North Carolina and has at all relevant times been doing business in the State of North Carolina, County of Rowan, and is an employer within the meaning of Title VII of the Americans with Disability Act of 1990 and the Age Discrimination in Employment Act of 1967.

3. Plaintiff has properly exhausted his administrative remedies by filing charges of discrimination against defendant with the Equal Employment Opportunity Commission ("EEOC"), Charge No.430-2012-00115, filed on or about October 18, 2011. A Right to Sue letter was issued by the EEOC with regard to Charge No. 430-2012-00115 on September 12, 2012.

## III. JURISDICTIONAL STATEMENT

4. That the allegations set forth in paragraphs 1 through 3 are realleged and incorporated by reference as if fully set forth.

5.     Plaintiff brings this action pursuant to the common law of the State of North Carolina, N.C. Equal Employment Practices Act ("EEPA"), N.C. Gen. Stat. § 143-422.2, N.C. Persons With Disabilities Protection Act, Chapter 168A of N.C. General Statutes, Americans with Disabilities Act of 1990 (ADA), 42 U.S.C.S. § 12101 *et seq.,* and Age Discrimination in Employment Act (ADEA), 29 U.S.C.S. § 621 *et seq.*

## IV. FACTUAL STATEMENTS

6.     That the allegations set forth in paragraphs 1 through 5 are realleged and incorporated by reference as if fully set forth.

7.     On or about April 2, 1985, plaintiff was hired by defendant in the position of P/T unload.

8.     Plaintiff was promoted on many occasions during his twenty-six (26) years of employment with defendant.

9.     Throughout his twenty-six (26) years of employment with defendant, plaintiff was a good, steady and productive employee.

10.    Until his date of termination of May 20, 2011, plaintiff had never had any disciplinary action taken against him by defendant.

11.    As of his termination date of May 20, 2011 with defendant, plaintiff was in the position of Business Manager. Upon information and belief, plaintiff was one of the longest serving Business Managers in North Carolina.

12.    While a Business Manager and supervisor, plaintiff made many sacrifices, putting the company first above all other things. He worked many fourteen (14) to nineteen (19) hour days, six (6) to seven (7) days a week and was on call twenty-four (24) hours a day, even when on vacation. Upon information and belief, defendant expected this level of work from plaintiff.

13.    On or about May 1, 2010, plaintiff was informed by a supervisor that he would be in charge of not only the Kannapolis, NC Center of defendant but also the Salisbury, NC Center, thus doubling his workload.

14.    With already working fourteen (14) to nineteen (19) hour days, six (6) to seven (7) days a week and was on call twenty-four (24) hours a day, even when on vacation with one Center, plaintiff's workload doubled on or about May 1, 2010. As such, plaintiff asked his Division Manager for assistance in operating two Centers. A supervisor with defendant informed plaintiff that he was on his own and to make it work.

15.    Upon information and belief, plaintiff was asked to operate two Centers knowing that he would not be physically able to manage such a workload, as no reasonable individual could operate such a workload. That upon information and belief, defendants were attempting to replace

plaintiff with a younger, lesser paid individual for his position in order to save defendant money.

16. On October 2, 2010, after not being able to sleep or eat from the stress of his job with defendant based upon the physical demand of working nineteen (19) hour days, plaintiff suffered a severe and disabling psychological disability directly related to stress from his work.

17. Plaintiff sought medical treatment as a result of the stress from work and was approved for disability leave by defendant in October 2010.

18. On or about October 19, 2010, plaintiff was diagnosed with Major Depression and Major Job Stress.

19. Defendant was aware that plaintiff had been diagnosed with Major Depression and Major Job Stress.

20. Despite being approved for disability leave, defendant continued to contact plaintiff while he was out on disability leave. Defendant would question whether or not plaintiff was actually stressed or if plaintiff was lying about his stress to get out of work.

21. During his approved disability leave, a supervisor informed plaintiff that they would turn over every piece of paper in Kannapolis, NC and Salisbury, NC to find "something to get on him."

22. Plaintiff was informed by co-workers with defendant that his supervisors were instructed to review every notebook and document to find a reason to discharge plaintiff while he was out on approved disability leave with defendant.

23. Upon information and belief while on disability leave, defendant monitored plaintiff's work phone calls; followed plaintiff; tracked by the GPS on his phone; called for his private work password and ID's so that work could get completed in plaintiff's name while he was absent so that he would be liable for any mistakes committed.

24. While on disability leave, co-workers informed plaintiff that they were asked by upper management of defendant to provide write-ups against plaintiff and that if they did not do so, they would be subject to termination.

25. Plaintiff was out of work due to his psychological disabilities from on or about October 2, 2010 until December 28, 2010. During that time period, plaintiff sought medical treatment related to his emotional distress and depression.

26. Upon information and belief, defendant could not find a reason to terminate plaintiff while he was out on his disability leave, despite reviewing business records and interviewing other workers.

27. When plaintiff returned to work after his approved disability leave, plaintiff was given

a new assignment in Monroe, NC. With this new assignment, plaintiff's commute was one hour and five minutes as opposed to a ten or twenty minute commute to Kannapolis, NC and Salisbury, NC.

28. As a result of the lengthy travel, plaintiff felt he was being harassed and retaliated against by defendant with this new assignment due to being out of work related to his disability. As such, plaintiff was written back out of work by his treating medical providers on January 12, 2011 related to the harassment, retaliation and disability.

29. Plaintiff's depression and stress were so severe as a result of the continued harassment and retaliation by defendant, that plaintiff's treating providers recommended that plaintiff be committed to a partial hospitalization program beginning January 19, 2011 through January 31, 2011.

30. Plaintiff then returned to work on restricted hours of four (4) hours per day for two (2) weeks as a result of his disability. Defendant was informed of plaintiff's work restrictions as assigned by his medical providers. Despite being informed of the work restrictions, defendant ignored those restrictions and asked plaintiff to work over his restrictions every day. Defendant refused to accommodate plaintiff's work restrictions related to his disability. When plaintiff requested not to work beyond his restrictions, he was harassed by defendant and was informed that he had to work beyond his restrictions.

31. On February 21, 2011, plaintiff requested in writing that defendant provide accommodations for his disability as prescribed by his medical provider.

32. Despite providing a written request for accommodations as prescribed by his medical provider, defendant refused to adhere to the work restrictions as recommended by his medical provider.

33. On February 28, 2011, plaintiff returned to work without restrictions. The same day, plaintiff was called by a supervisor into their office, who demanded plaintiff make a write-up of information he had no knowledge about. During this encounter, plaintiff was called a liar by the supervisor. Plaintiff felt very provoked during this encounter and harassed to the point that it was obvious that defendant was attempting to provoke plaintiff to the point that he quit his job.

34. From February 28, 2011 until the date of plaintiff's termination by defendant of May 20, 2011, plaintiff was asked to perform duties that other managers did not perform or were not expected to perform.

35. From February 28, 2011 to May 20, 2011, plaintiff was frequently called by supervisors into their offices and was harassed and retaliated against by calling him a liar and communicating to him that he was the worst manager. Plaintiff had never been subjected to this type of behavior prior to his approved disability leave in October 2010 during his tenure with defendant.

36. From February 28, 2011 to May 20, 2011, plaintiff was performing his job successfully and was informed as such from an immediate supervisor who was "new" from Atlanta

and did not know about plaintiff's recent encounters with upper management, who instead chastised and harassed him for no other reason than to obviously provoke plaintiff enough to quit.

37. On May 20, 2011, plaintiff was terminated without any explanation by defendant. Plaintiff was only told to turn in his ID, keys, phone, credit card and uniforms.

38. At the time of his termination, plaintiff was 49 years old. Plaintiff was replaced by a younger, lower paid employee.

39. That plaintiff was subject to the hostile work environment perpetuated by defendant from the time of his disability until his ultimate termination on May 20, 2011. That plaintiff attempted to focus on his job duties and ignore the disability and age discrimination for fear of being retaliated against until on May 20, 2011, he was ultimately discharged and not provided with any explanation on May 20, 2011 as to the basis for his termination.

40. That after his termination with defendant, plaintiff was informed by co-workers that his supervisor used him as an example to other managers that stress was not real and was not caused by defendant and if one attempted to claim such that they would be subject to termination just like plaintiff.

41. Plaintiff was harassed because of his disability and age and was then wrongfully terminated by defendant on May 20, 2011 in violation of North Carolina's public policy against discriminating against employees because of their disability and age and in violation of Americans with Disabilities Act of 1990 (ADA), 42 U.S.C.S. § 12101 *et seq.,* and Age Discrimination in Employment Act (ADEA), 29 U.S.C.S. § 621 *et seq.*

## V. FIRST CAUSE OF ACTION
(Wrongful Harassment and Termination In Violation of North Carolina's
Public Policy Against Wrongful Discharge, N.C. Equal Employment Practices Act
("EEPA"), N.C. Gen. Stat. § 143-422.2)

42. That the allegations set forth in paragraphs 1 through 41 are realleged and incorporated by reference as if fully set forth.

43. That plaintiff was informed by co-workers that a supervisor with defendant was attempting to terminate plaintiff so that he could be replaced by a younger individual who would earn less and thus save the defendant money.

44. The public policy of the State of North Carolina includes the prohibition against discriminating against employees because of their age in violation of the policies expressed in North Carolina's Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.1 *et. seq.*

45. In harassing and ultimately terminating plaintiff in whole or in part because of his age, defendants violated the public policies of the State of North Carolina.

46. As a result of defendant's acts, plaintiff has lost compensation and benefits and suffered emotional distress. Plaintiff is entitled to receive compensatory damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

47. Defendant's conduct was willful, wanton and in total disregard for the rights of plaintiff which entitles plaintiff to recover punitive damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

## VI. SECOND CAUSE OF ACTION
(Wrongful Harassment and Termination In Violation of North Carolina's Public Policy Against Wrongful Discharge, N.C. Persons With Disabilities Protection Act, Chapter 168A of N.C. General Statutes)

48. That the allegations set forth in paragraphs 1 through 47 are realleged and incorporated by reference as if fully set forth.

49. That plaintiff was repeatedly harassed and retaliated against by defendant as a result of his disability.

50. That plaintiff was treated differently than all other similarly situated managers after he returned from his disability leave.

51. That plaintiff requested reasonable accommodations that would allow him to perform his job successfully that defendant failed to implement.

52. The public policy of the State of North Carolina includes the prohibition against discriminating against employees because of a disability in violation of the policies expressed in N.C. Persons With Disabilities Protection Act, Chapter 168A of N.C. General Statutes.

53. In harassing and ultimately terminating plaintiff in whole or in part because of his disability, defendants violated the public policies of the State of North Carolina.

54. As a result of defendant's acts, plaintiff has lost compensation and benefits and suffered emotional distress. Plaintiff is entitled to receive compensatory damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

55. Defendant's conduct was willful, wanton and in total disregard for the rights of plaintiff which entitles plaintiff to recover punitive damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

## VII. THIRD CAUSE OF ACTION
(Wrongful Harassment and Termination In Violation of Age Discrimination in Employment Act (ADEA), 29 U.S.C.S. § 621 *et seq.*)

56. That the allegations set forth in paragraphs 1 through 55 are realleged and incorporated by reference as if fully set forth.

57. The Age Discrimination in Employment Act (ADEA), 29 U.S.C.S. § 621 *et seq* includes the prohibition against discriminating against employees because of their Age.

58. Plaintiff was replaced by a younger individual after his discharge on May 20, 2011.

59. In harassing, reprimanding and terminating plaintiff in whole or in part because of his age, defendants violated the ADEA.

60. As a result of defendant's acts, plaintiff has lost compensation and benefits, and has suffered emotional distress. Plaintiff is entitled to receive compensatory damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

61. Defendant's conduct was willful, wanton and in total disregard for the rights of plaintiff which entitles the plaintiff to recover punitive damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

## VIII. FOURTH CAUSE OF ACTION
(Wrongful Harassment and Termination In Violation of Americans with Disabilities Act of 1990 (ADA))

62. That the allegations set forth in paragraphs 1 through 61 are realleged and incorporated by reference as if fully set forth.

63. The Americans with Disabilities Act of 1990 (ADA) includes the prohibition against discriminating against employees because of their disability.

64. Plaintiff suffered from a disability pursuant to the ADA.

65. Plaintiff requested a reasonable accommodation for his disability, which was denied by defendant.

66. In harassing, reprimanding and terminating plaintiff in whole or in part because of his disability, defendants violated the ADA.

67. As a result of defendant's acts, plaintiff has lost compensation and benefits, and has suffered emotional distress. Plaintiff is entitled to receive compensatory damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

68. Defendant's conduct was willful, wanton and in total disregard for the rights of plaintiff which entitles the plaintiff to recover punitive damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

## IX. FIFTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)

69. That the allegations set forth in paragraphs 1 through 68 are realleged and incorporated by reference as if fully set forth.

70. Defendant's conduct of harassing and retaliating against plaintiff as a result of his age and disability was extreme and outrageous.

71. Defendant's conduct was intended to cause severe emotional distress.

72. Defendant's conduct did in fact cause severe emotional distress which resulted in plaintiff being partially hospitalized and treated for severe chronic depression.

73. As a result of the conduct of Defendant, Plaintiff suffered emotional distress that no reasonable person could be expected to endure in that plaintiff could not eat, sleep or function as a result of the hostile work environment created by defendant.

74. As a result of defendant's acts, plaintiff has lost compensation and benefits, and has suffered emotional distress. Plaintiff is entitled to receive compensatory damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

75. Defendant's conduct was willful, wanton and in total disregard for the rights of plaintiff which entitles the plaintiff to recover punitive damages in an amount in excess of Ten Thousand Dollars ($10,000.00).

## X. SIXTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress)

76. That the allegations set forth in paragraphs 1 through 75 are realleged and incorporated by reference as if fully set forth.

77. Defendant's conduct was negligent in that reassigning plaintiff to a job that was an hour and five minutes away after he was out on disability leave as opposed to ten to twenty minutes away; as a result of asking plaintiff to perform job duties that were not expected of other managers; in that defendant contacted plaintiff repeatedly while out on disability leave; and in that defendant refused to accommodate plaintiff's work restrictions.

78. It was reasonably foreseeable that the Defendant's conduct would cause the severe emotional distress suffered by Plaintiff.

79. As a result of the conduct of Defendant, Plaintiff suffered severe emotional distress that no reasonable person could be expected to endure in that plaintiff could not eat, sleep or function as a result of the hostile work environment created by defendant.

WHEREFORE, the plaintiff prays the Court grant the following relief:

1. That the plaintiff recover judgment against the defendant in an amount of in excess of Ten Thousand Dollars ($10,000.00) for compensatory damages.

2. That the plaintiff recover judgment against the defendant in an amount of in excess of Ten Thousand Dollars ($10,000.00) for punitive damages

3. That defendant be required to pay plaintiff's attorney fees.

4. That the costs of this action be taxed against the defendant.

5. For a trial of this matter by a jury.

6. For such other and further relief which to the Court may seem just and proper.

This the 6th day of December, 2012.

> DORAN, SHELBY, PETHEL and HUDSON, P.A.
> Attorneys for Plaintiff
>
> By: _____
> KATHRYN C. SETZER
> N.C. State Bar No. 31918
> 122 North Lee Street
> Salisbury, North Carolina 28144
> (704) 637-7878 Telephone
> (704) 633-9595 Facsimile
> Email: ksetzer@leestreetlawyers.com

STATE OF NORTH CAROLINA

COUNTY OF ROWAN

## VERIFICATION

MARK GOLDSTON, being first duly sworn, deposes and says: That he is the plaintiff in the above-entitled action; that he has read or has had read to him the foregoing and knows the contents thereof; and that the same is true of his own knowledge, except as to those matters and things therein alleged upon information and belief, and as to those matters he believes it to be true.

*Mark Goldston*
MARK GOLDSTON

Sworn to and subscribed before me
this the 5th day of December, 2012.

*Sherri D. Trexler*
NOTARY PUBLIC

My Commission Expires: 04-05-2015.



OFFICIAL SEAL
NOTARY PUBLIC - NORTH CAROLINA
COUNTY OF ROWAN
SHERRI D. TREXLER
MY COMMISSION EXPIRES 04-05-2015.